6 So.3d 699 (2009)
Mark GUSOW, Appellant,
v.
STATE of Florida, Appellee.
No. 4D08-2135.
District Court of Appeal of Florida, Fourth District.
April 1, 2009.
Rehearing Denied May 7, 2009.
*700 Mark Gusow, Coleman, pro se.
Bill McCollum, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, C.J.
On March 6, 2000, Mark Gusow entered pleas of guilty to 47 feloniesone count of conspiracy to commit racketeering, 11 counts of money laundering, 18 counts of grand theft, and 17 counts of loan broker fraud. Pursuant to his plea bargain with the state, he was sentenced to probation.
Just five months after the plea, a violation of probation warrant was filed. The violation of probation charges were amended in February and May 2001. On September 25, 2001, Gusow admitted the violations. The circuit judge reinstated Gusow on probation, with the additional condition of mandatory drug treatment.
In 2006, Gusow again violated his probation. The circuit judge sentenced him to a 17-year prison term on two counts, and concurrent sentences on the other counts.
In 2007, Gusow moved to vacate his 2000 plea arguing that his plea was involuntary, because his counsel misadvised him that he would face a maximum of only five years in prison for a violation of probation.[1] The trial court denied the motion
We affirm for two reasons. First, the attorney misadvice concerned a matter collateral to the plea, i.e., a consequence that did not flow directly from the plea, so the purported error did not amount to constitutionally deficient assistance of counsel. Second, Gusow's postconviction relief motion was untimely because it was filed more than two years after the conviction based on his plea became final. See Fla. R.Crim. P. 3.850(b).
It is important to view this case in the context of the ebb and flow of the law on postconviction relief over the last 15 years. Beginning in the 1990's, the Florida Supreme Court expanded the availability of postconviction relief. Concrete evidence of this expansion is the growth of postconviction relief cases on this court's docket. In 1998, 573 postconviction relief cases were filed, representing 12.9% of our docket. In 2008, 1192 postconviction relief cases were filed, comprising 23% of our docket. The typical postconviction case has evolved, moving from claims of attorney incompetence relating to a jury finding of guilty to cases such as Gusow's, where defendants seek to set aside plea bargains due to the bad advice their attorneys gave them prior to the plea. In these latter cases the contention is not that an innocent person was unjustly convicted of a crime, always a proper subject of postconviction relief, but that the plea was rendered "involuntary," that but for the bad legal advice, the defendants would not have pleaded guilty.
A crucial case in this development in postconviction law was State v. Leroux, *701 689 So.2d 235 (Fla. 1996), a four-to-three decision. In that case, the defendant alleged that he based his guilty plea on his lawyer's incorrect advice as to his estimated release date; the lawyer told Leroux that he would be released from prison in four years due to his entitlement to gain time credits. Id. at 235. After his incarceration, the Department of Corrections told Leroux that "his counsel's advice was erroneous and he would have to serve over seven years before being released." Id. The Supreme Court recognized that "[m]isrepresentations by counsel as to the length of a sentence or eligibility for gain time can be the basis for a postconviction relief in the form of leave to withdraw a guilty plea." Id. at 236. Although the trial judge correctly advised Leroux about his 15-year sentence and the mandatory minimum sentence of three years, the Supreme Court held that the general question covering whether anyone had "promised" Leroux "anything" to plead guilty did not conclusively rebut Leroux's postconviction relief claim.
Leroux fueled an explosion of cases where defendants sought to set aside guilty pleas based on what their lawyers allegedly told them prior to the plea.[2]
Major v. State, 814 So.2d 424 (Fla.2002), imposed an analytical framework on this area; the case recognized that prior to the defendant accepting a plea bargain, the trial court and defense counsel have a duty to advise a defendant about the direct, but not the collateral consequences of a plea. The failure to advise about a collateral consequence could not be the basis for postconviction relief to set aside the plea bargain. The court adopted this definition of a "direct consequence" of a plea: "whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Id. at 431 (quoting Zambuto v. State, 413 So.2d 461, 462 (Fla. 4th DCA 1982) (quoting Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1366 (4th Cir.1973))); see also Bolware v. State, 995 So.2d 268 (Fla. 2008); State v. Partlow, 840 So.2d 1040 (Fla.2003).
Gusow's claim is not that the trial court failed to advise him of the potential penalties under rule 3.172(c)(1)[3], but that defense counsel told him that his sentence would be no more than 5 five years if he violated his probation. The sentence the defendant might receive if he violated his probation was collateral to the plea  it was not "definite, immediate," and "largely automatic" as a result of his plea. The important term of this plea bargain was that Gusow was sentenced to probation for 47 felonies; the length of a prison term might come into play only if Gusow violated his probation and the court, in its discretion, revoked probation and decided that the violation justified more than five *702 years in prison instead of a myriad of other sentencing alternatives.[4]
Because this case involves a claim of wrong attorney advice about a matter collateral to the plea bargain, it is controlled by State v. Dickey, 928 So.2d 1193 (Fla.2006). There, the Supreme Court held that
claims that a defendant entered a plea based on wrong advice about a potential sentence enhancement for a future crime fail to meet the Strickland [v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ] test [for constitutionally deficient assistance to a defendant], either because such claims do not demonstrate deficient performance in the case at issue or because, as a matter of law, any deficient performance could not have prejudiced the defendant in that case.
Id. at 1198. This case is similar to Dickey, in that the attorney advice at issue involves a potential sentence for a future violation of the law, a violation of probation. Thus, following Dickey, we hold that "wrong advice about the consequences" for a violation of the law "not yet committed cannot constitute ineffective assistance of counsel." Additionally, the driving motivation for the defendant to accept the plea was that he received probation for 47 felonies, not the potential maximum sentence if he violated his probation.
If we were not constrained by the Leroux framework and were writing on a blank slate, we would adopt the analysis of Justice John Paul Stevens' dissent in United States v. Smith, 440 F.2d 521, 528-29 (7th Cir.1971),[5] written when the justice was on the seventh circuit. The dissent argued that a guilty plea should not be subject to collateral attack unless the error is constitutional or jurisdictional in nature. Id. at 528. Justice Stevens believed that collateral attacks to a conviction should be permitted only to correct serious "fundamental" constitutional errors, errors that resulted in a manifest injustice.
Justice Stevens drew a distinction between the "voluntariness" of a plea, which has a constitutional dimension because it involves the waiver of the right to a jury trial, and the "wisdom" of a plea. Justice Stevens explained that a defendant's lack of knowledge about the actual sentence to be imposed does not affect the voluntariness of the plea in a constitutional manner which would permit collateral attack. He wrote:
The `consequences' of the plea of guilty which relate to voluntariness, and therefore have constitutional significance, are consequences of the plea rather than consequences of the conviction. The same punishment may be imposed in consequence of conviction regardless of whether the accused pleaded guilty or not guilty. But the waiver of constitutional *703 protections, which would be available if the defendant elected to stand trial, is a consequence of the plea itself. In order for the plea to be voluntary, the defendant's understanding of the protections he is waiving must be sufficient to guarantee that the waiver is not the product of ignorance, terror, or deception.
Id. at 530 (footnote omitted). Justice Stevens explained that the consequences of conviction, such as a sentence or, as it applies to this case, the potential sentence for a violation of probation, do not have the same constitutional significance as the consequences of a plea:
The consequences of conviction have a different significance. They relate to the wisdom of a decision to plead guilty rather than to the voluntariness of the decision. A variety of factors enter into the exercise of judgment which produces that decision. Among them are counsel's appraisal of the likelihood of a successful defense, the admissibility of critical items of evidence, the question whether the accused can conscientiously make a false denial of guilt, the opprobrium that may result from a public trial, an estimate of the sentence which the judge may impose, and the chance of probation or parole. An erroneous appraisal of any of those factors affects the wisdom of the plea, but does not make it involuntary.
Id. at 530. Under Justice Stevens's analysis, Gusow's postconviction claim is meritless, because it relates only to the wisdom of his decision to plead guilty, viewed through the lens of hindsight; Gusow's claim is without constitutional significance.
A second basis for affirming the denial of postconviction relief is that it was untimely. Gusow filed his motion in 2007, more than two years after the judgment and sentence became final and this is not a case where "the facts upon which the claim is predicated were unknown to the movant... and could not have been ascertained by the exercise of due diligence." Fla. R.Crim. P. 3.850(b)(1).
As Justice Harding observed in his dissent in Leroux, easy entitlement to postconviction relief "damages the doctrine of finality." 689 So.2d at 238 (Harding, J., dissenting). The legal system places a value on having a case come to an end; it is a serious thing to set aside a plea seven years after the fact. Witnesses disappear, files are lost, and memories fade. In United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), the Supreme Court emphasized the importance of finality in our jurisprudence, and commented that a policy to limit collateral attack "has special force with respect to convictions based on guilty pleas":
Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.
Timmreck, 441 U.S. at 784, 99 S.Ct. 2085 (quoting United States v. Smith, 440 F.2d 521, 528-29 (7th Cir.1971) (Stevens, J., dissenting)).
Focusing on the importance of finality, recent Florida Supreme Court cases have taken a stringent view as to the time limit in Rule 3.850(b). The bad attorney advice in this case is analogous to the erroneous advice given in Ey v. State, 982 So.2d 618 (Fla.2008). There, a defendant charged *704 with petit theft told his lawyer that he had committed another crime  dealing in stolen property. Id. at 619. The lawyer told the defendant that a plea in the petit theft case "would not affect any subsequent sentence for his other crime." Id. Ey entered a plea in April, 2000 and was sentenced to probation. His plea became final in May, 2000. Soon after, he was arrested and charged with dealing in stolen property. When the defendant was sentenced in 2001 on the dealing in stolen property conviction, the felony petit theft conviction was used to classify him as a habitual offender and he was sentenced to a 30-year term. Id. One aspect of the Supreme Court's holding is that a lawyer's erroneous advice about the effect of a guilty plea "on a subsequent sentence imposed [in another case] for a crime committed before the plea" was entered is a cognizable claim of ineffective assistance of counsel. Id. at 623.
In 2002, outside the rule 3.850 two-year time limit for the petit theft case, Ey challenged his plea. He alleged that counsel had misadvised him that the petit theft conviction would not be used to enhance the sentence for dealing in stolen property. Ey learned of the misadvice on August 30, 2000, when he received the state's notice of sentence enhancement in the second case. Ey, 982 So.2d at 620.
On the timeliness issue, the Supreme Court expressly rejected Ey's view that the motion was timely because it was filed within two years of August 30, 2000, after the defendant received notice of the state's intent to enhance. The Court reasoned:
The fact of the plea subjects the defendant to the potential for subsequent sentence enhancement on another offense. The defendant with knowledge both of his plea and of the other offense he committed before entering his plea can ascertain within two years of the plea whether that plea could subject him to enhancement of any subsequent sentence. Therefore, we hold that a defendant's claim that counsel erroneously advised that a plea would not affect the subsequent sentence of another crime committed before the plea must be filed within two years after the conviction based on the plea is final.
Ey, 982 So.2d at 625.
Significant to this case is the holding that a claim "must be filed within two years after the conviction based on the plea is final." Id. at 625. Gusow's claim is analogous to that of the Ey defendant. See also State v. Green, 944 So.2d 208, 217 (Fla.2006) (holding that defendant has only two years from the date of conviction becoming final in which to discover that the conviction resulting from the plea subjects defendant to deportation).
Like the defendant in Ey, within two years of the 2000 plea, Gusow could have discovered that a probation violation on his 47 felonies would have subjected him to more than five years in prison. The length of a potential sentence for a violation of probation was also at issue in the 2001 violation of probation proceeding where Gusow admitted the violation. Gusow's 2007 motion was filed well outside the two-year window of rule 3.850(b), so that it was untimely. This court has never extended the timeliness analysis once applied in deportation cases under Peart v. State, 756 So.2d 42 (Fla.2000), to claims of misadvice, such as the one presented by Gusow. See Wainwright v. State, 983 So.2d 635 (Fla. 4th DCA 2008) (existence of conditional release was not a newly discovered fact justifying untimely postconviction motion attacking voluntariness of 1990 plea) rev. denied, 996 So.2d 214 (Fla. 2008). McFadden v. State, 904 So.2d 570 (Fla. 4th DCA 2005) (finding that the Rule 3.850 time limit for attacking the voluntariness *705 of plea based on counsel's alleged misadvice began to run when conviction and order placing defendant on probation became final, not later when defendant violated probation and was sentenced); Marshall v. State, 983 So.2d 680 (Fla. 4th DCA 2008) (en banc) (holding that discovery of collateral civil consequences of a plea beyond two year time limit does not permit belated postconviction claim). See also Chandler v. State, 2009 WL 80221 (Fla. 2d DCA 2009) (recognizing that Ey overruled the second district's cases to the contrary and that the two-year time limit begins to run from the date the conviction becomes final and not from the time the defendant learns of misadvice).
Rule 3.850(b) sets out limited exceptions to the time limitation, and reliance on the misadvice of counsel is not one of them. See Fla. Bar re Amendment to Rules of Criminal Procedure (Rule 3.850), 460 So.2d 907 (Fla.1984) (creating for the first time the two-year time limitation on postconviction claims). A motion filed outside the time limit is barred by laches as a matter of law unless one of the exceptions is met. See State v. Taylor, 722 So.2d 890 (Fla. 4th DCA 1998); see also McCray v. State, 699 So.2d 1366, 1368 (Fla.1997). As the Florida Supreme Court held in State v. Green, 944 So.2d 208 (Fla.2006), and reaffirmed in Ey, a movant can discover an attorney's misadvice about the law. The postconviction movant, who is the party seeking the extraordinary relief of setting aside a presumptively valid and final conviction, bears the burden of discovering and raising claims within the two-year time limit. Ignorance of the law is no excuse. Although no one can know all the law, all persons are charged with constructive knowledge of the law. With due diligence, a defendant can discover an attorney's misadvice within the two-year time limit. If the purported erroneous legal advice is truly the lynchpin of a plea, there is an incentive to verify the information within two years of the plea. The time for filing a postconviction motion should not be held open until a defendant has "actual knowledge" regarding counsel's bad advice about the law. Such a policy crushes the concept of finality and opens plea bargains to attack many years after the entry of a plea.
Creating an additional exception to the time limitation based on reliance on the misadvice of counsel would make ignorance of the law an excuse, would encourage defendants to remain ignorant of the law, and would place a premium on the services of attorneys who provide misadvice. A defendant could hold a misadvice claim as a "wildcard" which could be played to challenge the voluntariness of a plea many years after the plea conference.
To find Gusow's claim untimely comports with the concept of finality that the two-year time limit is supposed to serve. The rule allows a claim outside of the two year limit if "facts on which the claim is predicated" "were unknown to the movant... and could not have been ascertained by the exercise of due diligence." Fla. R.Crim. P. 3.850(b)(1) (emphasis added). The length of a maximum sentence for a violation of probation is not a "fact" contemplated by the rule. The length of a potential sentence is a matter of statutory law, to which there was always an answer within the two-year time limit. Unlike exculpatory evidence not found because of an attorney's laziness, a potential sentence for a violation of probation is not the type of "fact" which justifies setting aside a plea many years after the plea was entered.
Finally, we note that the onslaught of postconviction relief cases over the last decade has likely damaged the remedy. We recall the words of Justice Jackson describing the "undiscriminating use of the *706 writ of habeas corpus by federal judges to set aside state court convictions":
The fact that the substantive law of due process is and probably must remain so vague and unsettled as to invite farfetched or border-line petitions makes it important to adhere to procedures which enable courts readily to distinguish a probable constitutional grievance from a convict's mere gamble on persuading some indulgent judge to let him out of jail. Instead, this Court has sanctioned progressive trivialization of the writ until floods of stale, frivolous and repetitious petitions inundate the docket of the lower courts and swell our own. Judged by our own disposition of habeas corpus matters, they have, as a class, become peculiarly undeserving. It must prejudice the occasional meritorious application to be buried in a flood of worthless ones. He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search.

Brown v. Allen, 344 U.S. 443, 536-39, 73 S.Ct. 397, 425-26, 97 L.Ed. 469 (1953) (Jackson, J., concurring) (emphasis added).
Affirmed.
POLEN, J., concurs.
HAZOURI, J., dissents with opinion.
HAZOURI, J., concurring in part and dissenting in part.
I concur in the result because I agree that what sentence may be imposed upon violation of probation is a collateral consequence of the plea. However, see the contrary holding by the Third District Court in Polite v. State, 990 So.2d 1242 (Fla. 3d DCA 2008).
I disagree that Gusow's claim is untimely if his claim of misadvice is a cognizable claim under rule 3.850. The majority relies heavily on the Florida Supreme Court's decision in Ey v. State, 982 So.2d 618 (Fla.2008). In my judgment, the majority reads Ey too broadly. As the majority notes, the court in Ey concluded that a defendant must file his claim "within two years after the conviction based on the plea [becomes] final." Id. at 625. By doing so, the court reasoned that a defendant "with knowledge both of his plea and of the other offense he committed before entering the plea can ascertain within two years of the plea whether that plea could subject him to enhancement of any subsequent sentence." Id. The majority concludes that, like the defendant in Ey, Gusow, within two years of the 2000 plea, could have discovered that a probation violation on his forty-seven felonies would have subjected him to more than five years in prison. What the majority fails to note is that, in Ey, the factual evidence supporting the court's conclusion is substantially different than in the instant case and, is therefore, distinguishable.
In Ey, the defendant had been arrested for petit theft and pled no contest to the charge because, allegedly, his counsel advised him that his plea to petit theft would not affect the charges pending against him for three counts of dealing in stolen property. Subsequent to his plea to petit theft, he was tried and convicted on the charges of dealing in stolen property and, at sentencing, the trial court used his conviction for petit theft to enhance his sentence as a habitual felony offender. This resulted in a sentence of thirty years in prison. Prior to his trial for dealing in stolen property, the state gave notice of its intent to seek enhancement because of the prior conviction for petit theft. This notice occurred well within the two-year time limit for postconviction relief under rule 3.850. In addition, the conviction and sentence for dealing in stolen property was also within the two-year time limit for filing a motion *707 pursuant to rule 3.850. Therefore it is under these facts that the court in Ey concluded:
[t]he defendant with knowledge both of his plea and of the other offense he committed before entering his plea can ascertain within two years of the plea whether that plea could subject him to enhancement of any subsequent sentence. Therefore, we hold that a defendant's claim that counsel erroneously advised that a plea would not affect a subsequent sentence for another crime committed before the plea must be filed within two years after the conviction based on the plea is final.
Ey, 982 So.2d at 625 (citing Fla. R.Crim. P. 3.850(b)). The defendant in Ey was on notice prior to his trial on dealing in stolen property that there could be enhancement because of his petit theft conviction, and that was well within the two-year time limit. So when the court in Ey says that the defendant can ascertain within two years of the plea whether the plea could subject him to enhancement of any subsequent sentence, does that require the defendant to make an independent investigation as to whether the advice of counsel was incorrect? If true, then the whole concept of misadvice of counsel as a cognizable claim under rule 3.850 is somewhat illusory.
In Ey, the defendant had actual knowledge that the state was seeking enhancement prior to the expiration of the two-year time limit. In the instant case, without being advised by the trial court that his sentence for violation of probation could exceed five years, Gusow's reliance on the misadvice of his counsel would only become ascertainable when he was sentenced for the probation violation.
The majority poses the proposition that defendants are charged with constructive knowledge of the law and that ignorance of the law is no excuse. If correct, then we need not concern ourselves with timeliness. If a defendant is presumed to know the law and ignorance of the law is no excuse, then a defendant should be presumed to know that the advice given by counsel is an incorrect statement of the law.
There is no record evidence that Gusow was advised by the trial court at any of his several violation of probation hearings that he could be sentenced to more than five years imprisonment upon violation of his probation. As farfetched as it may seem that Gusow, facing probation for forty-seven prior felonies, would not be aware that he could be sentenced in excess of five years, we cannot conclude, based on this record, that there is no substance to his claim.[6]
NOTES
[1] One problem with this case is that it appears that appellant has provided only a partial record of the plea colloquy. On the day the plea was taken, the case was recalled numerous times. In that portion of the record appellant filed in support of this motion, there is not a complete plea colloquy. The circuit judge who took the 2000 plea is thorough and meticulous, so it is unlikely that he omitted to cover those factors required by Florida Rule of Criminal Procedure 3.172(c). Gusow does not claim that his plea was involuntary because the trial court failed to tell him any of the things required by rule 3.172(c).
[2] As of the date of this opinion, Leroux has been cited at least 169 times in reported appellate decisions, most often for the proposition that a claim of misadvice about the length of the sentence that would actually be served was not refuted by records and required an evidentiary hearing.
[3] As we noted in footnote 1, the record does not appear to contain the entire plea colloquy. If it did, and the trial court advised Gusow of the maximum possible penalty under rule 3.172(c)(1), we would hold that the record conclusively refutes his claim. Faced with a discrepancy between the "maximum possible penalty" for his 47 felonies and what his lawyer said he could receive for violating his probation, the defendant could not have reasonably relied on the lawyer's supposed advice that he faced only five years for a violation of probation. See Scheele v. State, 953 So.2d 782, 785 (Fla. 4th DCA 2007); Hill v. State, 895 So.2d 1122, 1124 (Fla. 4th DCA 2005); contra Medina v. State, 920 So.2d 136 (Fla. 3d DCA 2006); Johnson v. State, 757 So.2d 586 (Fla. 2d DCA 2000).
[4] We recognize that the Third District Court of Appeal has held that "the maximum penalty that could be imposed if community control/probation is violated is a direct consequence of" a plea to two years in prison followed by two years of community control. See Polite v. State, 990 So.2d 1242, 1244 (Fla. 3d DCA 2008). We certify conflict with Polite. We also disagree with Polite's apparent holding that a trial court must grant postconviction relief where a defendant testifies about bad attorney advice, without which the defendant would not have entered a plea, and the attorney does not remember the transaction with the defendant, but testifies to his standard practice which is to correctly advise defendants about the length of their sentences. We believe that under these circumstances the trial court is entitled to disbelieve the defendant's testimony.
[5] The United States Supreme Court quoted Justice Stevens' dissent in Smith with approval in United States v. Timmreck, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).
[6] Perhaps there are in existence plea colloquies or other record evidence that Gusow was advised that he was facing a prison term far in excess of five years upon violation of his probation but that is not part of the record on this appeal.