NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JAY LARSON,                                )
                                           )
              Appellant,                   )
                                           )
v.                                         )         Case No. 2D17-336
                                           )
STATE OF FLORIDA,                          )
                                           )
              Appellee.                    )
                                           )
_____    )

Opinion filed April 20, 2018.

Appeal from the Circuit Court for
Hillsborough County; Michelle Sisco,
Judge.

Jay Larson, pro se.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Tonja Vickers Rook,
Assistant Attorney General, Tampa, for
Appellee.


BLACK, Judge.

        Jay Larson appeals from the order denying his motions for postconviction

relief.  We reverse the denial as to one issue, affirm as to the remaining issues, and

remand with instructions to permit Larson to withdraw his plea.

Larson filed a timely motion for postconviction relief in three 2012 cases which were resolved via a negotiated plea agreement that required the sentences in those cases to be served concurrently. In the initial motion, filed pursuant to Florida Rule of Criminal Procedure 3.850, Larson raised three claims of ineffective assistance of trial counsel. He filed two subsequent motions during the pendency of the first motion, supplementing the initial motion and raising claims related to those presented in the initial motion. See Fla. R. Crim. P. 3.850(e); Pritchett v. State, 884 So. 2d 417, 418 (Fla. 2d DCA 2004). As relevant to our decision, the second subsequent motion raised the issue of counsel's failure to advise Larson that unless his 2012 sentences were ordered to be served concurrently with the sentences in his 2001 and 2003 cases—which Larson was serving on conditional release when he was arrested, charged, and convicted in the 2012 cases—the 2012 sentences would be served consecutively to the 2001 and 2003 sentences as required by section 921.16, Florida Statutes (2012). Larson argued that had he known his 2012 sentences would run consecutively to his sentences in the prior cases, he would not have entered the plea. He argued both that he was affirmatively misadvised that the sentences would be concurrent and that counsel failed to advise him of a direct consequence of his plea—that his new sentences would be served consecutively to his existing sentences on the prior cases unless otherwise ordered by the trial court.

At the postconviction hearing, Larson testified that on multiple occasions he advised counsel that he was serving his 2001 and 2003 sentences on conditional release. Further, Larson testified that because counsel knew that Larson was serving his existing sentences on conditional release, it was incumbent upon counsel to advise

him of any direct consequences of his plea agreement in the 2012 cases. Larson contended that he was entitled to know prior to entering his plea if his sentences in the 2012 cases would be served consecutively to the sentences in his prior cases.

As to the affirmative misadvice claim, however, Larson testified that he could not say that he specifically confirmed with counsel that his sentences in the 2012 cases would run concurrently with his existing sentences but that because "concurrent means concurrent," he entered his plea believing that all of his sentences would be served concurrently.

Larson then explained that in 2013, about a year into his prison term, he received notice of a new release date. He then inquired with the Department of Corrections (DOC) as to why his release date had been pushed back, extending his time in prison. The DOC advised Larson that because the trial court had not specified that his 2012 sentences were to be served concurrently with his 2001 and 2003 sentences the sentences would be served consecutively, citing section 921.16.

Larson's trial counsel also testified at the hearing. Counsel denied being informed that Larson was serving his prior sentences on conditional release. He testified that if Larson had advised him that he was on conditional release, counsel would have included that information in his notes. Counsel testified that he was not specifically asked by Larson whether the sentences in his 2012 cases would run concurrently with the sentences on his prior cases. Counsel stated that they discussed only the 2012 cases at the plea hearing.[1] Counsel also testified that at the time of

_____

[1]We note that Larson's prior cases were discussed at the plea hearing as they formed the basis for his designation as a prison releasee reoffender. Larson's

- 3 -

Larson's plea counsel had not been aware that the sentencing court could have ordered that the 2012 sentences were to be served concurrently with the sentences which Larson had been serving on conditional release. Larson's conditional release status was not mentioned by counsel, the prosecutor, Larson, or the court on the record at the plea hearing.

As pertinent to our resolution of this appeal, in its order denying Larson's motions, the postconviction court found that Larson did not advise counsel that he was on conditional release at the time the 2012 cases were at issue and that counsel had advised Larson only that the 2012 sentences would run concurrently. The court therefore found that there was no misadvice and that counsel did not perform deficiently. These findings are supported by competent substantial evidence. See State v. Hatton, 143 So. 3d 1006, 1007 (Fla. 2d DCA 2014).

However, Larson's second subsequent motion also raised the issue of counsel's failure to advise him of the direct consequences of his plea. Despite citing counsel's testimony that he had not known at the time of Larson's plea that there was a means by which the sentencing court could have imposed Larson's 2012 sentences to run concurrently with his 2001 and 2003 sentences—and therefore could not have advised Larson of the possibility—the postconviction court denied the motion. Implicitly then, because the court determined that counsel was not ineffective for advising Larson only as to the 2012 cases, the court found that the structuring of Larson's 2012

---

penitentiary packet was introduced at the plea hearing and sentencing, and it indicates that Larson was on conditional release in 2011.

sentences with his existing sentences was a collateral rather than direct consequence of Larson's plea.

On appeal, Larson raises multiple issues but we need address only one: Larson's contention that the postconviction court erred in denying his second subsequent motion because the structuring of Larson's 2012 sentences with his existing sentences is a direct consequence of his plea, which he must be advised of in order for his plea to be voluntary. Larson argues, in part, that the application of the mandatory language of section 921.16(1), in the absence of a determination by the trial court, to establish the structure of his sentences—whether they are to be served concurrently or consecutively—has a definite and immediate effect on his plea in this case. Thus, in considering Larson's claim, we must determine whether the imposition of consecutive sentences for offenses not charged in the same information is—in the absence of a judicial determination and therefore based on statute—a direct consequence. We conclude that it is.

Preliminarily, we note that this issue is cognizable in a rule 3.850 motion. See, e.g., Platt v. State, 664 So. 2d 307, 308 (Fla. 2d DCA 1995) (affirming denial of rule 3.800(a) motion without prejudice to the filing of a rule 3.850 motion raising the issue of consecutive sentencing to a control-release violation which resulted in a longer sentence than discussed at the probation violation plea hearing); Widemond v. State, 27 So. 3d 162, 163 (Fla. 1st DCA 2010) (reversing summary denial of claim that "counsel was ineffective for failing to present to the court case law standing for the proposition that the trial court could impose his sentence concurrently" with an existing sentence); Wilson v. State, 873 So. 2d 419, 420-21 (Fla. 3d DCA 2004) (remanding for clarification

and stating that if the court ordered Wilson's 2001 sentence to run consecutively to his 1994 sentence, Wilson would be allowed the opportunity to withdraw his plea pursuant to rule 3.850 as involuntarily entered). And, as this court has stated, although the claim may be couched in terms of ineffective assistance of counsel, the issue is truly whether the plea was entered involuntarily. See Knight v. State, 611 So. 2d 602, 602 (Fla. 2d DCA 1993).

Turning to the merits, the Florida Supreme Court has stated that "[t]he voluntariness of a plea depends on whether the defendant is aware of the direct consequences of the plea and those consequences listed in Florida Rule of Criminal Procedure 3.172(c)." State v. Partlow, 840 So. 2d 1040, 1042 (Fla. 2003). A "direct consequence" of a plea is one which results in "a definite, immediate and largely automatic effect on the range of the defendant's punishment." Major v. State, 814 So. 2d 424, 431 (Fla. 2002). Rule 3.172(c) requires the trial court to determine that the defendant understands "[t]he complete terms of any plea agreement, including specifically all obligations the defendant will incur as a result." Fla. R. Crim. P. 3.172(c)(7).

The "[f]ailure to advise a defendant of the direct consequences of entering a plea 'prohibits [him or her] from rendering a truly voluntary and knowledgeable waiver of the constitutional rights inherent in the plea arrangement.' " State v. Yeomans, 172 So. 3d 1006, 1009 (Fla. 1st DCA 2015) (second alteration in original) (quoting State v. Green, 421 So. 2d 508, 509 (Fla. 1982)). Further, a trial judge is obligated "to ensure that the defendant understands the direct consequences of his plea," including "those consequences of the sentence which the trial court can impose." State v. Ginebra, 511

So. 2d 960, 961 (Fla. 1987), superseded on other grounds by In re Amendments to Fla. Rules of Crim. Pro., 536 So. 2d 992 (Fla. 1988), as recognized in State v. De Abreu, 613 So. 2d 453 (Fla. 1993).

It is not disputed that Larson was on conditional release when he pleaded to and was sentenced on the 2012 charges.

> Conditional release is a post-prison supervision program where an inmate is placed on community supervision for a period of time equal to the amount of gain time the prisoner earned while in prison. See § 947.1405, Fla. Stat. (2008); Logan v. State, 964 So. 2d 209 (Fla. 5th DCA 2007). The Florida Parole Commission oversees the program, and retains jurisdiction over the defendant until his or her conditional release supervision terminates. Gillard v. State, 827 So. 2d 316, 317 (Fla. 1st DCA 2002). During that time, upon violation of any of the terms and conditions of release, the Commission may revoke the conditional release. § 947.141(4), Fla. Stat. (2010) ("[T]he [Commission] panel may revoke conditional release . . . and thereby return the releasee to prison to serve the sentence imposed . . . .").

Crump v. State, 137 So. 3d 1148, 1149-50 (Fla. 3d DCA 2014).

Conditional release is part of an existing sentence. See Scantling v. State, 711 So. 2d 524, 525 (Fla. 1998). Therefore, "[u]pon violation of conditional release, a defendant is not resentenced; rather the Parole Commission makes an administrative determination regarding conditional release, which leaves the original sentence undisturbed." Shorter v. State, 113 So. 3d 940, 941 (Fla. 5th DCA 2013) (citing Fla. Admin. Code R. 23–23.011, concerning the procedure for the revocation of conditional release); see also Chandler v. State, 1 So. 3d 284, 286 n.1 (Fla. 2d DCA 2009) ("If a defendant violates a condition of his or her release before the expiration of his or her full, pronounced prison term, gain time and release are revoked and the defendant may be reincarcerated for the balance of his or her sentence." (emphasis

- 7 -

added)); accord Logan v. State, 964 So. 2d 209, 210 (Fla. 5th DCA 2007).

"[P]unishment for a control-release violation is not an as-yet undetermined sentence, and therefore a court can order a new sentence to run consecutive[ly] to such punishment." Scantling, 711 So. 2d at 525-26. Likewise, the court can order a new sentence to run concurrently with the punishment for a control-release violation. Shorter, 113 So. 3d at 941 ("[T]he defendant is already subject to a sentence, [and] a court can order a new sentence to run consecutively or concurrently to such a sentence."); see also Bruce v. State, 679 So. 2d 45, 46 (Fla. 3d DCA 1996) ("[T]he legislature has vested the trial court with discretion in criminal cases to impose either concurrent or consecutive sentences in independent cases." (citing § 921.16(1), Fla. Stat. (1993))).

The decision to revoke conditional release is an administrative determination and, as such, is collateral to the plea. See Scantling, 711 So. 2d at 526 ("An as-yet undetermined action of the Parole Commission is not a sentence. Rather, the Commission's action is an administration determination as to how an inmate's control-release violation affects his status within the context of the sentence he has already received."). However, "[e]ven where no decision has been made on the control[-]release violation by the time of sentencing, the trial court still has the discretion to run the [new] sentence either concurrently or consecutively to" the existing sentence. McCarthur v. State, 766 So. 2d 292, 293 (Fla. 4th DCA 2000); accord Widemond, 27 So. 3d at 163; see also Richardson v. State, 947 So. 2d 1219, 1220 (Fla. 1st DCA 2007) ("[A] trial court may order a sentence to run concurrently or consecutively to a

pending control-release violation." (citing Scantling, 711 So. 2d at 525-26)).  And it is the structure of the sentences that constitutes the alleged direct consequence here.

In the absence of a directive from the trial court that sentences in otherwise independent cases are to be served concurrently, the statute requires that those sentences "shall be served consecutively."  § 921.16(1) (emphasis added).  That is, "[s]entences of imprisonment for offenses not charged in the same indictment, information, or affidavit shall be served consecutively unless the court directs that two or more of the sentences be served concurrently."  Id. (emphasis added).  Therefore, where the trial court does not impose the structure of a new sentence in relation to existing sentences, the requirement of section 921.16(1) that the sentences be served consecutively automatically applies to the new sentence.

Here, the failure of both the trial court and counsel to recognize the ramifications of section 921.16(1) on the structure of Larson's new sentences with his existing sentences resulted in a definite, immediate, and automatic effect: the sentences must be served consecutively, and the new sentences cannot begin to run until the existing sentences—whatever their length—have been served.[2]  See Odegaard v. State, 137 So. 3d 505, 508 (Fla. 2d DCA 2014) (reversing a postconviction order where

_____

[2]Additionally, counsel's lack of knowledge that Larson was still serving the 2001 and 2003 sentences resulted in counsel's failure "to consider the impact of the prior sentences on the latter sentences, namely that [Larson's] plea of guilty would result in consecutive sentences."  See Tate v. State, 758 So. 2d 1188, 1189 (Fla. 3d DCA 2000).  Consideration of the prior sentences on the latter sentences would have required counsel's "legal analysis of the consequences of the plea"; the "failure to fully advise [Larson] of those consequences was 'a substantial and serious deficiency measurably below that of competent counsel.' "  See id. (quoting Castro v. State, 419 So. 2d 796, 798 (Fla. 3d DCA 1982)).

- 9 -

neither the court nor counsel advised the defendant that he faced the possibility of consecutive sentences in separate cases—his new offense and his community control violation—stating "[u]nquestionably, a plea cannot be knowing and voluntary if the defendant does not understand all direct consequences of the plea, including those that affect the range of punishment").  And although the length of those consecutive sentences may not be definite where the conditional-release violation is pending, that the sentences shall be served consecutively—that the new sentences cannot begin being served until the existing sentences have been completed—is definite and automatic in the absence of the trial court's exercise of discretion.  Because only the court may impose sentences, the structure of the sentence is determined by the trial court or—as in this case—by operation of statute, and it is a direct consequence of the plea.  Cf. Reyna v. State, 18 So. 3d 1131, 1133 (Fla. 2d DCA 2009) ("Credit for time served, or jail credit, is a direct consequence of a plea because it affects the range of punishment—in this case, the length of Mr. Reyna's incarceration—in a definite manner, immediately and automatically upon imposition of a sentence."); Colon v. State, 199 So. 3d 960, 962 (Fla. 4th DCA 2016) ("The application of jail credit to the sentences as they were structured was a direct consequence of the plea, and appellant claims he had no notice that the DOC would calculate his sentence on the basis of the lesser charge."); Gusow v. State, 6 So. 3d 699, 701 (Fla. 4th DCA 2009) ("The sentence the defendant might receive if he violated his probation was collateral to the plea—it was not 'definite, immediate,' and 'largely automatic.' ").

We note that in Crump, the Third District affirmed the denial of a rule 3.850 motion where Crump argued that the intent of his plea agreement in a 2010 case

had been thwarted by a post-plea forfeiture of his gain time in a 1995 case for which he had been on conditional release when charged with the 2010 crimes. 137 So. 3d at 1149. When Crump began serving his 2010 sentences, he was advised by the DOC that all of his gain time in the 1995 case had been forfeited. The Crump court concluded that "[w]here a longer imprisonment results from a forfeiture of gain time awarded in a separate case not considered by the court sentencing after a plea in a different case, the defendant cannot claim the forfeiture breaches the plea agreement." Id. at 1150-51. The court reasoned, "the [DOC] has sole discretion in awarding or revoking an inmate's gain time, and the courts have no authority to countermand the [DOC]'s forfeiture of gain time." Id. at 1151. The Third District affirmed the order of denial without prejudice to Crump's ability to challenge the forfeiture in the appropriate administrative proceedings. Id. The Crump decision does not address pending conditional-release violations, Scantling, or section 921.16. This may be because the DOC advised Crump that his gain time had been forfeited rather than that his sentences were required to be served consecutively pursuant to section 921.16.[3] Here, the DOC advised Larson that by operation of law his sentences in the 2012 cases would be served consecutively to the 2001 and 2003 sentences. The DOC made no reference to gain time. And while it is true that the DOC has sole discretion in awarding or revoking gain time, the issue before this court is not the conditional-release violation or any revocation of gain time. Rather, the issue before this court is the voluntariness of the

---

[3]We note that the case relied upon in the Crump decision for its holding does not address control or conditional release. 137 So. 3d at 1150-51 (citing State v. Jackson, 842 So. 2d 1040 (Fla. 3d DCA 2003)).

- 11 -

plea in the 2012 cases where Larson was not made aware of the definite, immediate, and automatic effects of section 921.16 on Larson's sentence.

Accordingly, we reverse the order denying Larson's motions for postconviction relief inasmuch as it incorrectly determined that the application of section 921.16(1) to the structure of Larson's sentences was not a direct consequence of his plea. Our reversal of the postconviction order on this ground renders it unnecessary for us to address Larson's additional arguments on appeal. However, we must address the procedure on remand.

Unlike the cases of Horton v. State, 976 So. 2d 686, 686 (Fla. 2d DCA 2008), and Bruce, 679 So. 2d at 46, it is not clear that the trial court would have imposed concurrent sentences had it been aware that Larson was serving his existing sentences on conditional release. Nor is it clear that the concurrent sentences would have been a condition of the plea agreement. As such, we cannot simply reverse and remand for correction of the sentences.

Because the failure to advise Larson of a direct consequence of his plea rendered his plea involuntary, the relief to which Larson is entitled is the ability to withdraw his plea. See Yeomans, 172 So. 3d at 1009. Larson is not entitled to be resentenced. See Carter v. State, 67 So. 3d 242, 244 (Fla. 2d DCA 2010).[4]

---

[4]In the context of a rule 3.850 motion raising this issue, at least one court has held that "[b]ecause the trial court could not have made a decision on whether [the defendant's] sentence should run concurrently or consecutively absent knowledge of the true status of his prior sentence . . ., we remand for a determination as to whether the [sentence] in this case is to run concurrent with or consecutive to the [prior sentence]." Wilson, 873 So. 2d at 420-21. While we understand the rationale behind such remand instruction, we do not believe it is consistent with postconviction case law.

If Larson elects on remand to withdraw his plea he will be facing a significantly longer prison term than that which he is currently serving, and the State is under no obligation to offer another plea agreement.[5]  We note, however, that the State could agree that Larson may serve his new sentences concurrently with his existing sentences and that the court may resentence Larson accordingly.  See Carter, 67 So. 3d at 244.

Affirmed in part; reversed in part; remanded with instructions.

CASANUEVA and BADALAMENTI, JJ., Concur.

---

[5]The plea forms in Larson's 2012 cases indicate that Larson qualified as a prison releasee reoffender, a violent career criminal, and a habitual felony offender.