[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11043

Non-Argument Calendar

_____

PATRICIA RUBIO,
PAUL MACNEIL,

Plaintiffs-Appellants,

*versus*

BENGAL PROPERTIES, INC,
d.b.a. The Park Apartments,

Defendant-Appellee,

SOUTHERN MANAGEMENT SYSTEMS, INC,

2                    Opinion of the Court                    24-11043

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-62038-RS

_____

Before ROSENBAUM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Paul MacNeil and Patricia Rubio appeal the district court's grant of judgment as a matter of law to Bengal Properties, Inc., their former landlord, at trial on their claim under the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72(9). They claim that, after they terminated their lease early, Bengal violated § 559.72(9) by billing them for charges that neither the lease nor Florida landlord-tenant laws permit. Following the presentation of MacNeil and Rubio's case, the court concluded that the record lacked sufficient evidence of an essential element of the FCCPA claim: that Bengal actually knew the debt was not legitimate. So the court declined to submit the case to the jury and instead entered judgment for Bengal. MacNeil and Rubio appeal that ruling, as well as the denial of their earlier motion to amend the pleadings to add Bengal's property-management company as a defendant. After careful review, we affirm the judgment of the district court.

# I.

MacNeil and Rubio ("Tenants") signed a lease for an apartment together at the Bengal-owned Park Apartments. The lease ran from August 11, 2018, through August 31, 2019. In November 2018, Rubio took a promotion in another city, so the two vacated the apartment by December 1, 2018, and ceased paying rent. Park Apartments retook possession of the apartment soon after, and it issued notices to the Tenants charging them over $6,000 in fees and damages. The bulk of the charges came from two early termination fees: (1) a $2,400 fee for breaking the lease early; and (2) a $2,400 fee for failing to provide 60 days' notice of early termination. Then, Southern Management Systems, Inc., attempted to collect the charges from the Tenants.

The Tenants sued Bengal and Southern in state court, and Defendants eventually removed the action to federal court. As relevant here, the Tenants' second amended complaint alleged a single claim against Bengal for violating the FCCPA, Fla. Stat. § 559.72(9). The Tenants also brought claims against Southern under the FCCPA and the federal Fair Debt Collection Practices Act. They alleged that the early-termination fees were impermissible under Fla. Stat. § 83.595, while other charges for damages to the apartment were fabricated and fraudulent.

In May 2021, the Tenants moved for leave to amend their second amended complaint and to modify the scheduling order's deadline for amendments, which had passed in December 2020. The Tenants said that they intended to add "a newly discovered

party defendant Park Pointe Properties, Inc. ("Park Pointe") . . . and assert that Defendant [Bengal] is vicariously liable for these claims because Park Pointe was its agent." They noted that Park Pointe was Bengal's property management company, but it had not been identified in Rule 26 disclosures and discovery, and that they had recently learned Bengal was simply a holding company with no employees. Bengal and Southern opposed amendment on multiple grounds, including lack of diligence.

Meanwhile, the parties filed competing motions for summary judgment. The district court struck the parties' summary-judgment filings for noncompliance with local rules and set the matter for trial. Then, two days before trial, the Tenants settled with Southern.

After a pretrial hearing in February 2022, the district court denied the Tenants' motion to amend. The court found that the Tenants had "waited more than a year to commence discovery in the action after the [deadline] to amend pleadings had passed," and that they knew or could have known through diligence that Park Pointe was a potential defendant in the action, since the lease disclosed that Park Pointe was Bengal's agent. The court also said that denying the motion to amend "will not prejudice Plaintiffs because Plaintiffs concede that Park Pointe is Bengal's agent and Plaintiffs intend to allege Bengal's vicarious liability for Park Pointe's conduct."

On the morning of trial, the district court granted Bengal's motion *in limine* to exclude any evidence or testimony about any

wrongdoing attributable to Southern, citing the settlement. The court excluded "any mention about any allegations against Southern," stating that the Tenants could "proceed and talk only as to what Bengal has done in terms of [its] liability." Not only that, but the court ordered that the Tenants could not proceed on a theory of vicarious liability at all. The court observed that "vicarious liability has never been pled in this case" and was "not alleged in [the] complaint." Despite the Tenants' claim that vicarious liability was implied in the complaint, the court reiterated that there was "no vicarious liability at issue for this trial" because it was "not even pled," and that the trial concerned Bengal only.

The jury heard live testimony from MacNeil, Rubio, and Albert Salem, Bengal's president and 50% owner, as well as deposition-designated testimony from Michelle Diubaldo, Park Pointe's corporate representative and the on-site manager for Park Apartments.

In his testimony, Salem explained that Bengal was a company with no employees or day-to-day operations, and that Bengal had hired Park Pointe to manage operations at Park Apartments. So according to Salem, MacNeil and Rubio interacted solely with Park Pointe employees in relation to their tenancy at Park Apartments. When the Tenants' counsel attempted to explore the relationship between Park Pointe and Bengal, the district court sustained Bengal's objection, citing its prior ruling about vicarious liability. But Salem otherwise agreed that Park Pointe was acting on behalf of Bengal.

For their case, the Tenants had to prove Bengal's knowledge that the charges imposed were invalid.  *See* Fla. Stat. § 559.72(9) (prohibiting attempts to enforce a debt "when such person knows that the debt is not legitimate").  To that end, the Tenants' counsel questioned Salem about Fla. Stat. § 83.595, which, in the Tenants' view, prohibited the imposition of the two early-termination fees by Bengal.  Salem also testified that Bengal had filed twenty-four eviction actions from 2019 to the date of trial in February 2022, that Bengal had collected approximately $24,000 in break-lease fees, and that he was "generally," but "limitedly," familiar with Florida's "Landlord Tenant Act."  But Salem denied prior knowledge of § 83.595's requirements for early-termination fees.

Consistent with a pretrial ruling *in limine*, the district court prevented the Tenants' counsel from mentioning to the jury that Salem was a licensed attorney or impeaching his testimony on that basis.  Nonetheless, the court permitted testimony from Diubaldo that Salem had added addendums to the lease used by Park Apartments to comply with Florida law.

After the Tenants rested their case, Bengal moved for judgment as a matter of law under Federal Rule of Civil Procedure 50.  As relevant here, Bengal asserted that the FCCPA claim failed because the Tenants did not prove the essential element that Bengal had actual knowledge the charges were illegitimate.  Bengal noted that Salem denied knowing of the Tenants' situation or § 83.595.  And in Bengal's view, such knowledge could not come either from Southern or Park Pointe.  Bengal argued, "They actually have to

prove that someone from Bengal, not someone from Park Pointe because they don't have a vicarious liability claim, Your Honor. Not someone from Southern who settled the case and there's no vicarious liability claim with respect to them."

The Tenants responded that the issue of actual knowledge was bound up with Salem's credibility. The Tenants also noted that Salem owned "five significant apartment complexes," and that, according to Diubaldo, he had previously implemented changes to the lease used by Park Pointe for Park Apartments.

The district court orally granted Bengal's motion for judgment as a matter of law. The court concluded that the Tenants failed to prove the required element of actual knowledge, reasoning that the evidence did not support a reasonable inference that Bengal "knew of this as an illegitimate collection or attempt [to] do so." The court noted that "the only one who had actual knowledge . . . is the party who settled with the plaintiff which is Southern but not Bengal Properties in and of itself." Accordingly, the court did not submit the case to the jury. Instead, the court entered judgment for Bengal on the Tenants' claims.

The Tenants timely moved for a directed verdict and a new trial. Among other arguments, they claimed that a reasonable jury could infer that Bengal or Park Pointe had actual knowledge the charges were illegitimate. They also contended that the court erred by precluding evidence that Salem was a licensed attorney, even for impeachment purposes. Finally, they maintained that the

court erred by failing to consider Bengal's vicarious liability for Southern.

The district court denied the motion. In relevant part, the court rejected the Tenants' argument that permitting them "to explore a theory of vicarious liability of Bengal for the action of Park Pointe or Southern at trial could have presented circumstantial evidence to prove Bengal's actual knowledge." The court noted that the Tenants did not attempt to introduce deposition testimony of Southern's or Park Pointe's representatives, apart from Diubaldo, nor did they "seek to preserve objections at trial on this issue." So the court concluded that the Tenants had not shown an effect on their substantial rights so as to warrant a new trial. The Tenants now appeal.

## II.

The Tenants first contend that the district court abused its discretion under Rule 15, Fed. R. Civ. P., by denying leave to amend to add Park Pointe as a defendant. We review the denial of a motion to amend for an abuse of discretion. *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1240 (11th Cir. 2009).

Leave to amend ordinarily is governed by Rule 15, which sets out a "liberal amendment standard." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). But we have held that "[a] plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under Fed. R. Civ. P. 16(b)." *Southern Grouts & Mortars*, 575 F.3d at 1241. "Because [the Tenants'] motion to amend was filed after

the scheduling order's deadline, [they] must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)." *Sosa*, 133 F.3d at 1419.

A district court may deny a motion to amend for lack of good cause where the "plaintiff's failure to comply with the court's scheduling order resulted from a lack of diligence in pursuing her claim." *Southern Grouts & Mortars*, 575 F.3d at 1241 (quotation marks omitted). The requisite lack of diligence can be shown not only where a plaintiff "has full knowledge of the information with which it seeks to amend its complaint before the deadline passes," but also where a plaintiff "fail[s] to seek the information it needs to determine whether an amendment is in order." *Id.* at 1241 n.3.

Here, the record supports the district court's conclusion that the Tenants did not establish good cause to amend the scheduling order. The court found that the Tenants lacked diligence because they did not commence discovery until after the deadline to amend pleadings had passed. The Tenants respond that the delay was caused by Bengal's inadequate Rule 26 disclosures, which did not identify Park Pointe. But the court reasoned that, since the lease disclosed that Park Pointe was Bengal's agent, the Tenants knew or could have known through diligence that Park Pointe was a potential defendant in the action.

Although the Tenants claim that the lease did not provide "full knowledge" of the facts they later learned in discovery, they admit it "constitute[s] some knowledge." And a lack of diligence may be shown not only when a party has full knowledge of the

facts, but also when a plaintiff "fail[s] to seek the information it needs to determine whether an amendment is in order." *Southern Grouts & Mortars*, 575 F.3d at 1241 n.3. Because the lease disclosed that Park Pointe was Bengal's agent, the district court did not abuse its discretion in concluding that Tenants lacked diligence in seeking the information they needed to determine whether to add Park Pointe as a defendant.

## III.

Next, we consider the grant of Bengal's motion for judgment as a matter of law under Rule 50(a) on the Tenants' FCCPA claim, along with related evidentiary rulings. We review *de novo* the district court's grant of a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50. *McGinnis v. Am. Home Mortg. Serv., Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016). Judgment as a matter of law may be granted on an issue if a reasonable jury, viewing the evidence in the light most favorable to the nonmovant, "would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *see McGinnis*, 817 F.3d at 1254.

We review evidentiary rulings for an abuse of discretion. *United States v. Macrina*, 109 F.4th 1341, 1347 (11th Cir. 2024). "To gain a reversal based on a district court's evidentiary ruling, a party must establish that (1) its claim was adequately preserved; (2) the district court abused its discretion in interpreting or applying an evidentiary rule; and (3) this error affected a substantial right." *Proctor*

*v. Fluor Enters., Inc.*, 494 F.3d 1337, 1349 (11th Cir. 2007) (quotation marks omitted).

## A.

Under the FCCPA, a person collecting a consumer debt may not "[c]laim, attempt, or threaten to enforce a debt when such person *knows* that the debt is not legitimate, or assert the existence of some other legal right when such person *knows* that the right does not exist." Fla. Stat. § 559.72(9) (emphasis added). Section 559.72(9) therefore "requires a plaintiff to demonstrate that the . . . defendant possessed actual knowledge" that the debt is not legitimate or that the right does not exist. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010); *see also Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1312–13 (11th Cir. 2019).

Actual "[k]nowledge requires an awareness or understanding of a fact or circumstance. Constructive knowledge, on the other hand, is that knowledge which one using reasonable care or diligence should have." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (cleaned up). Nonetheless, actual knowledge may be established by circumstantial evidence. *Avenue CLO Fund, Ltd. V. Bank of Am., N.A.*, 723 F.3d 1287, 1297 (11th Cir. 2013).

To establish actual knowledge in this case, the Tenants rely primarily on a Florida statute governing a landlord's "[c]hoice of remedies upon breach or early termination by tenant." Fla. Stat. § 83.595. The statute gives the landlord the option to "[c]harge liquidated damages" or an "early termination fee" not to "exceed 2

months' rent," but "only if the tenant and the landlord, at the time the rental agreement was made, indicated acceptance of liquidated damages or an early termination fee . . . by signing a separate addendum" in substantial compliance with an example provided in the statute.  Fla. Stat. § 83.595(4).  The Tenants contend that, because their lease did not include such a separate addendum, Bengal could not charge the early-termination fees.

The district court concluded that the Tenants failed to offer sufficient evidence that Bengal knew the asserted debt was not legitimate.  The Tenants respond that, in their view, the court prevented them from offering evidence to prove actual knowledge, specifically evidence of (1) Salem's status as an attorney and (2) the knowledge of Bengal agents Park Pointe and Southern.  They also contend that there was sufficient evidence to support a jury finding of actual knowledge.

**B.**

For starters, the Tenants have not shown that the district court reversibly erred in precluding testimony as to potential bases of actual knowledge.

We start with the issue of "vicarious liability," which generated some confusion at trial.  "Under Florida law, knowledge an agent or employee acquires within the scope of her authority generally may be imputed to her principal or employer." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1095 (11th Cir. 2017).  So insofar as Park Pointe or Southern obtained relevant knowledge while acting as Bengal's agent, that knowledge may be imputed to

24-11043               Opinion of the Court               13

Bengal.[1]  *See id.*; *see also Marchisio*, 919 F.3d at 1313 (holding, in the context of a § 559.72(9) claim, that "[the agent's] knowledge . . . may be imputed to Defendant if Plaintiffs establish a principal/agent relationship").

Nonetheless, the Tenants' briefing fails to identify any specific information obtained by Park Pointe or Southern that could be imputed to Bengal for purposes of establishing actual knowledge.  Nor did the Tenants make known to the district court during trial the substance of any evidence along those lines.  *See* Fed. R. Evid. 103(a)(2) (stating that, to preserve an objection to a ruling excluding evidence, a party must "inform[] the court of its substance by an offer of proof").  So on this record, we must conclude that any error committed by the court in limiting evidence about Park Pointe or Southern either was not preserved or was harmless.  *See Proctor*, 494 F.3d at 1349.

Next, we assume without deciding that the district court abused its discretion by excluding evidence that Salem was a licensed attorney.  Nonetheless, for the reasons explained below, the

---

[1] The district court based its ruling on the Tenants' failure to identify a theory of vicarious liability in its pleadings, but federal pleading rules do not "require that a theory of vicarious liability be specifically pled in the complaint," so long as the complaint otherwise gives fair notice of the claim and the grounds on which it rests. *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259–60 (11th Cir. 2015).  And here, the pleadings did so.  The district court's decision to the contrary was error.

inclusion of that fact alone does not support a reasonable inference that Bengal had actual knowledge.

## C.

After careful review, we agree with the district court that, even viewing the evidence in the light most favorable to the Tenants, a reasonable jury "would not have a legally sufficient evidentiary basis to find" for the Tenants on the issue of actual knowledge. Fed. R. Civ. P. 50(a)(1); *see McGinnis*, 817 F.3d at 1254. We therefore affirm the grant of judgment as a matter of law under Rule 50(a).

For starters, we reject the Tenants' reliance on a theory of constructive knowledge to establish liability under § 559.72(9). The Tenants claim that Salem (as an attorney) and Bengal or Park Pointe (as landlords) were charged with knowledge of § 83.595, the early-termination-fee statute. *See, e.g.*, *Grayden v. Rhodes*, 345 F.3d 1225, 1239 (11th Cir. 2003) ("[I]ndividuals are presumptively charged with knowledge of [a publicly available] statute."); *Gusow v. State*, 6 So. 3d 699, 705 (Fla. Dist. Ct. App. 2009) ("Although no one can know all the law, all persons are charged with constructive knowledge of the law."). But while Salem or Bengal or Park Pointe may be charged with *constructive* knowledge of § 83.595, that's not enough for purposes of a claim under § 559.72(9), which "requires a plaintiff to demonstrate that the . . . defendant possessed *actual* knowledge" that the debt is not legitimate or that the right does not exist. *LeBlanc*, 601 F.3d at 1192 n.12.

And here, the evidence fails to support a reasonable inference that Bengal actually knew of § 83.595's requirements for early-termination fees. Evidence that Bengal had collected approximately $24,000 in charges from tenants for breaking leases or had brought two-dozen eviction actions in a three-year period, does not show Bengal knew the lease was not compliant with § 83.595. The Tenants identify no evidence that the evictions involved disputed early-termination fees or that charging early-termination fees under a lease would require review of § 83.595. Similarly, that Bengal had made other changes to the lease to comply with Florida law does not show it had knowledge of the early-termination-fee statute but chose not to act.

Nor can we say that Salem's status as a licensed attorney changes things. Salem testified that he was generally familiar with Florida's landlord-tenant law, but not with the provisions of § 83.595 at issue. The Tenants contend they were prevented from impeaching Salem on this point with evidence that he was an attorney who had filed eviction actions for Bengal, and they assert that Salem's credibility was an issue for the jury.

But while the Tenants cite the existence of "multiple eviction complaints with exhibits that specifically referenced § 83.595," they did not attempt to offer evidence of the eviction complaints or exhibits at trial. And the district court did not otherwise prohibit the Tenants from questioning Salem about the evictions or Salem's knowledge of § 83.595. So insofar as the Tenants complain that the court precluded them from offering evidence of the eviction

complaints or exhibits at trial, they failed to preserve the objection by informing the court of, and obtaining a ruling about, that evidence at trial.[2]  *See* Fed. R. Evid. 103(a)(2) (stating that, to preserve an objection to a ruling excluding evidence, a party must "inform[] the court of its substance by an offer of proof").  And the mere fact that Salem was an attorney—the narrow issue preserved for appeal—does not alone support a finding of actual knowledge on this record.

## IV.

For these reasons, the Tenants have not shown that the district court abused its discretion in denying their motion to amend the pleadings or that it reversibly erred in granting Bengal's motion for judgment as a matter of law on the issue of actual knowledge. We affirm.

**AFFIRMED**.

---

[2] The Tenants also cite a "three-day demand" for rent they received from Park Pointe on behalf of Bengal, which referenced "retak[ing] possession pursuant to the applicable section(s) of Florida Statutes § 83.595 (2009)."  But like with the eviction complaints and exhibits, the Tenants did not offer the demand as evidence at trial, and we see no indication that the "trial court prevented the tenants from introducing the three-day demand," as the Tenants claim on appeal.