[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10734

_____

UNITED STATES OF AMERICA,

　　　　　　　　　　　　　　　　　　　　Plaintiff-Appellee,

*versus*

JO ANN MACRINA,

　　　　　　　　　　　　　　　　　　　　Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cr-00216-SCJ-LTW-1

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal from a trial for public corruption requires us to decide whether the district court abused its discretion in two evidentiary rulings and in its refusal to give a proposed jury instruction. Jo Ann Macrina, the former Commissioner of the Department of Watershed Management for the City of Atlanta, was charged with taking bribes from a contractor. At trial, the district court admitted portions of a recorded conversation between Macrina and federal agents over Macrina's objection under Federal Rule of Evidence 106. The district court also admitted the Code of Ethics for city employees over Macrina's objection that it was irrelevant and substantially more prejudicial than probative. Later, the district court declined to give Macrina's proposed jury instruction that any payments received after an official act were a gratuity and not a bribe. Because none of these rulings were an abuse of discretion, we affirm Macrina's convictions.

## I.    BACKGROUND

Jo Ann Macrina worked as the Commissioner of the City of Atlanta's Department of Watershed Management. She evaluated proposals for architectural and engineering services for the Department. In 2013, the Department solicited proposals for a new architecture and engineering contract. Eleven contractors submitted proposals, including a company owned by Lohrasb "Jeff" Jafari.

After the initial evaluation process in November 2014, Jafari's company was not selected for the contract.

Macrina later made several decisions that revived Jafari's bid. She requested a reevaluation of the proposals, replaced two of the evaluation committee members, requested interviews as part of the evaluation process, and actively participated in scoring the proposals during the reevaluation. She also scored Jafari's company higher than every other evaluator. After the reevaluation, Jafari's company was selected for the contract. In May 2016, a few weeks after the proposal evaluation process concluded, Macrina was fired, and she went to work for Jafari's company.

Shortly after she was fired, Macrina contacted the Federal Bureau of Investigation to "provide information of possible corruption" in Atlanta. During their conversations with Macrina, the agents became suspicious of her relationship with Jafari while she was employed by the Department. The agents interviewed Macrina over 20 times and slowly gathered more information about her relationship with Jafari and the evaluation process that led to his company receiving the contract with the Department.

In one meeting, Macrina told the agents that she received landscaping, $10,000 in cash, and other perks from Jafari while she worked for the Department. Macrina told the agents that Jafari had instructed his employees "to buy whatever Jo Ann Macrina wanted" during a trip to the United Arab Emirates for a water management conference, including a diamond ring. Macrina said that Jafari gave her the $10,000 before her trip to "buy whatever she

wished with it." Macrina also told the agents that while she was Commissioner, Jafari promised to hire her in a top-level position at his company.

Macrina later met with the agents a final time. In that meeting, she "started backtracking" on her admission about Jafari's gifts and stated that the $10,000 payment was a "signing bonus." Because her story had changed, the agents secretly recorded the latter portion of the final interview.

The Bureau referred Macrina for prosecution based on the agents' conversations with her. A grand jury later indicted Macrina for bribery, *see* 18 U.S.C. § 666(a)(1)(B), and conspiracy to commit bribery, *see id.* § 371. Before trial, the government notified Macrina and the district court that it intended to introduce some portions of the recording of the final interview between Macrina and the agents.

In a pretrial motion in limine, Macrina objected under Federal Rule of Evidence 106 that admitting only portions of the interview would confuse and mislead the jury. Macrina stated in a footnote in her motion that she sought to admit certain statements from the recording and that she could "provide the Court" the "portions of the transcript" that she "requested be played as well" under Rule 106. Macrina never quoted the statements she wanted to admit into evidence and never cited the pages of the transcript for the district court.

The district court denied Macrina's motion. The district court explained that the rule of completeness, embodied in

Rule 106, narrowly applies only in the context of a defendant's custodial statements. Because the recorded interview was not a custodial interview, the district court declined to exclude the recording or admit any other portions of the recording under Rule 106.

The government also sought to admit the City of Atlanta's Code of Ethics for city employees. Macrina objected to this evidence in a pretrial motion. She argued that the code was irrelevant and that its admission would confuse the issue at trial, mislead the jury, and unfairly prejudice her. The district court overruled her objection and allowed the government to introduce the code into evidence.

At trial, the government argued that Macrina accepted bribes in exchange for steering City contracts to Jafari. The government presented evidence that Macrina received things of value from Jafari, including promises of a job and $10,000 in cash before her trip to the United Arab Emirates. An agent testified that Macrina admitted that Jafari gave her the $10,000 to spend on whatever she wanted. The government also presented evidence that Macrina did not disclose the money she received from Jafari on her financial and travel disclosure forms after the trip. It presented evidence—including the testimony of one of Jafari's associates and admissions from Macrina herself—that she received noncash benefits from Jafari, like a luxury hotel room, a diamond ring, luggage, bedding, and about $1,000 in landscaping. And it presented evidence that Macrina gave Jafari preferential treatment in the contract-selection process as well as other task-order-project-bid processes.

During trial, the government introduced its excerpts of the recorded interview. Macrina objected by reiterating the arguments from her pretrial motion. But Macrina again failed to identify any portion of the recording that she wanted to admit into evidence. The district court overruled her objection.

Macrina also proposed that the jury be instructed that the "law does not prohibit a public official accepting or agreeing to accept a thing of value <u>after</u> performing government business, a government transaction, or a series of government transactions." The requested jury instruction stated that if the jury finds that "the Defendant accepted or agreed to accept anything . . . of value after performing government business, a government transaction, or a series of government transactions, then [it] cannot rely on that thing of value as a basis to find the Defendant violated the law." The district court rejected Macrina's proposed instruction.

The district court instead instructed the jury on the elements of the charged offense of bribery. *See id.* § 666. It told the jury to determine whether the government proved beyond a reasonable doubt that Macrina "was an agent of the City of Atlanta" who "accepted or agreed to accept a thing [of] value[]" and who, "in return for the acceptance or agreement to accept, . . . intended to be influenced or rewarded for a transaction or series of transactions of the City of Atlanta involving something worth $5,000 or more." And the district court instructed the jury that the government had to prove that Macrina "acted corruptly" to convict her.

The district court also instructed the jury that Macrina was not on trial for violating the City ethics code and that the jury could convict her only if it found that the government proved each element of the federal charges beyond a reasonable doubt:

> Now, ladies and gentlemen, throughout this trial, you have heard evidence about various City of Atlanta ethics rules. This is a federal trial, and the defendant is not on trial for violating any City ethics rules. Defendant is only on trial for violating the federal laws I have explained to you. Defendant can only be convicted of those federal laws if you agree that the government has proven beyond a reasonable doubt each and every element of those federal laws.

No party objected to this instruction. Indeed, when the district court proposed the limiting instruction, Macrina's counsel responded, "Okay. We can live with that."

The jury convicted Macrina of bribery and conspiracy to commit bribery. The district court sentenced her to 54 months for each conviction, to be served concurrently, and concurrent three-year terms of supervised release for each conviction.

## II.    STANDARDS OF REVIEW

We review evidentiary rulings for abuse of discretion. *See United States v. Barton*, 909 F.3d 1323, 1330 (11th Cir. 2018). We must affirm unless the district court made a clear error of judgment or applied an incorrect legal standard. *Id.* This Court "may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Waldman v.*

*Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017). We also review a refusal to give a jury instruction for abuse of discretion. *See United States v. Focia*, 869 F.3d 1269, 1282–83 (11th Cir. 2017) (citing *United States v. Browne*, 505 F.3d 1229, 1276 (11th Cir. 2007)). We reverse "only if we are left with a substantial . . . doubt as to whether the jury was properly guided in its deliberations." *Browne*, 505 F.3d at 1276 (citation and internal quotation marks omitted).

## III.    DISCUSSION

We divide our discussion into three parts. First, we explain that the district court did not abuse its discretion when it allowed the government to play only portions of the recording of the final interview. Second, we explain that the district court did not abuse its discretion when it admitted the ethics code into evidence because it was relevant and not substantially more prejudicial than probative. Last, we explain that the district court did not abuse its discretion when it declined to give Macrina's proposed jury instruction because the proposed instruction was not an accurate statement of the law.

### A.  *The District Court Did Not Abuse Its Discretion by Admitting Portions of the Recording.*

Macrina challenges the admission of portions of the recording of her final interview. She asserts that additional portions of the recording should have been admitted under Federal Rule of Evidence 106, which governs "Remainder of or Related Writings or Recorded Statements." FED. R. EVID. 106. The rule applies when a party introduces only part of a writing or recorded statement, and

it allows the opposing party to introduce other portions of that writing or recorded statement that "in fairness ought to be considered at the same time." *Id.* The opposing party must identify the other portions of the writing or recording that he wants admitted into evidence:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.

*Id.* The rule does not limit its application to only certain kinds of writings or recorded statements.

The district court denied Macrina's Rule 106 objection on the ground that Rule 106 applies only to custodial statements. The district court erred, but we affirm on another ground.

The district court misunderstood Rule 106. Our precedents have never limited the application of the rule to custodial statements. The contrary idea stems from a misreading of precedents that hold that we do not ordinarily allow self-serving hearsay to be introduced through other witnesses because it evades cross-examination in contravention of the hearsay rule, *see United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999), and that Rule 106 extends to "post-arrest oral statements," *United States v. Santos*, 947 F.3d 711, 730 (11th Cir. 2020). In *Cunningham*, we held that a defendant "cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-

examination" because the hearsay rule forbids that attempt. 194 F.3d at 1199. But *Cunningham* was not limited to the context of Rule 106 or the context of custodial statements. Its holding involves a general rule against admitting self-serving hearsay. And our holding in *Santos*, which extended Rule 106 to post-arrest oral statements, did not limit the application of Rule 106 to custodial statements. *See* 947 F.3d at 730.

Nothing in the text of Rule 106 limits its application to custodial statements. The rule applies to criminal and civil cases. If Rule 106 had a custodial requirement, it would not apply in any civil case that did not involve custody. We decline to hold that Rule 106 applies to only custodial statements without a clear textual warrant.

Yet we affirm on another ground. Macrina's objection should not have been sustained because Rule 106 does not make an entire writing or recorded statement always admissible, and Macrina failed to timely identify the specific portions of the recording that she wanted to admit.

Rule 106 "'does not automatically make the entire document admissible' once one portion has been introduced." *Id.* (quoting *United States v. Pendas-Martinez*, 845 F.2d 938, 944 (11th Cir. 1988)). Instead, "Rule 106 permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced." *Id.* (citations and internal quotation marks omitted). Rule 106 refers to the evidence to be introduced under the rule as "*any other part—or any other writing*

*or recorded statement*—that in fairness ought to be considered at the same time." FED. R. EVID. 106 (emphasis added). The objecting party must point to the specific portions he wants admitted so that the district court can assess their admissibility on fairness grounds.

Our sister circuits read the rule the same way that we do. The Eighth Circuit has held that the party seeking to admit a conversation under Rule 106 "must specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted." *United States v. King*, 351 F.3d 859, 866 (8th Cir. 2003) (citation and internal quotation marks omitted). And the Fifth Circuit has explained the need for specificity in analyzing fairness under Rule 106. *See United States v. Branch*, 91 F.3d 699, 727–29 (5th Cir. 1996); *United States v. Herman*, 997 F.3d 251, 267 (5th Cir. 2021). It explained that it did "no violence to criminal defendants' constitutional rights by applying Rule 106 as written and requiring that a defendant demonstrate *with particularity* the unfairness in the selective admission of his post-arrest statement." *Branch*, 91 F.3d at 729 (emphasis added). A defendant must point to exact quotations or directly cite the portions of document or recording to benefit from the fairness analysis of Rule 106. *See id.* at 728–29; *Herman*, 997 F.3d at 267.

The text of Rule 106 requires the opposing party to introduce "any other part" of a writing or recording that should be considered for fairness. FED. R. EVID. 106. The rule does not provide that a party may invoke the rule and never specify the parts he wishes to admit. And the specificity requirement correctly places

the burden of production on the party seeking to introduce the evidence.

If we allowed general objections to suffice under Rule 106, the district court would have to review the entire writing or recording and determine if certain portions were needed for fairness. Here, the district court would have had to review the entire 1-hour-and-45-minute-long recording carefully and identify portions that might be admissible under Rule 106. That obligation would be unduly burdensome for a district court during trial. The party seeking to benefit from Rule 106 is already familiar with the evidence and is better positioned to identify additional portions that should be admitted for fairness. To benefit from Rule 106, a party must identify for the district court the specific additional parts of a writing or recording.

Because Macrina did not identify specific portions of the recording that she wanted to admit, she did not comply with Rule 106. At trial, Macrina generally objected to the introduction of the recorded excerpts but did not offer other specific excerpts for admission: her counsel adopted only the argument raised in the pretrial motion. But Macrina's pretrial motion also did not identify the specific portions of the recording that she wanted to admit.

The only mention of specific portions of the recording appears in a footnote of Macrina's pretrial motion. In the footnote, Macrina stated that the district court had already received a copy of the full transcript of the recording and that "counsel [could] provide the Court with a copy of the transcript that shows the portions

of the transcript in yellow highlight that the government intends to play to the jury and in blue highlight what Ms. Macrina has requested be played." She did not provide the highlighted transcript to the district court before trial. Indeed, she did not submit the highlighted transcript to the district court until after the verdict. Before trial, Macrina only *offered* to provide the portions she wanted the district court to admit.

### B.  The District Court Did Not Abuse Its Discretion by Admitting the Code of Ethics.

Macrina argues that the district court abused its discretion when it admitted the City Code of Ethics into evidence. She contends that the code was not relevant and that even if it were relevant, its admission was substantially more prejudicial than probative. We disagree.

Relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. *Id.* R. 402. "The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002). Evidence is relevant if it "has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." FED. R. EVID. 401.

The City code was relevant to prove Macrina's corrupt intent. Evidence of violations of ethical rules or regulations can establish corrupt intent and be admissible if it is relevant to the charged conduct. *See United States v. Stefan*, 784 F.2d 1093, 1098

(11th Cir. 1986) (evidence of violations of a civil statute were admissible in a criminal trial because the civil violations established the defendant's knowledge that he was violating the criminal statute); *see also United States v. Grubb*, 11 F.3d 426, 433 (4th Cir. 1993) (evidence of the judicial canon of ethics was admissible and relevant to prove intent and absence of mistake when coupled with an appropriate limiting instruction); *United States v. Harvard*, 103 F.3d 412, 422 (5th Cir. 1997) ("Evidence of civil banking regulations is admissible for the limited purpose of showing the defendant's motive or intent."). For example, a failure to follow disclosure requirements can be evidence of corrupt intent. *United States v. Roberson*, 998 F.3d 1237, 1249 (11th Cir. 2021) (holding that, among other evidence, "nondisclosure of the [bribe] payments" and "the failure of the parties to inform [federal agencies] of their financial relationship support the inference that the payments were made with a corrupt state of mind"); *United States v. McNair*, 605 F.3d 1152, 1197 (11th Cir. 2010) ("[T]he extent to which the parties went to conceal their bribes is powerful evidence of their corrupt intent."). Because her failure to comply with the code makes Macrina's intent to accept a bribe more probable, the code is relevant evidence. *See* FED. R. EVID. 401.

Macrina argues that even if the code were relevant, the district court abused its discretion because the admission of the code was substantially more prejudicial than probative. She contends that the government's repeated references to the code confused and misled the jurors. The government responds that the evidence was highly probative and that cross-examination and a limiting

instruction to the jury cured any undue prejudice. We agree with the government.

Under Federal Rule of Evidence 403, the district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, or misleading the jury. FED. R. EVID. 403; *see also Tinoco*, 304 F.3d at 1120. Rule 403 is an "extraordinary remedy" that the district court "should invoke sparingly, and the balance should be struck in favor of admissibility." *Tinoco*, 304 F.3d at 1120 (alterations adopted) (citation and internal quotation marks omitted). When we review issues under Rule 403, we "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989). We defer to the discretion of the district court on "whether the probative value was outweighed by an unfair prejudice," and we reverse the decision to admit the testimony "only if it were clearly an abuse of discretion." *United States v. Calhoon*, 97 F.3d 518, 533 (11th Cir. 1996).

The district court did not abuse its discretion. Even if the admission of the code could have unfairly prejudiced Macrina, the limiting instruction cured that unfairness. We have held that a limiting instruction in the context of Rule 403 evidence may mitigate the risk of unfair harm. *See id.* at 533–34; *see also Samia v. United States*, 143 S. Ct. 2004, 2013 (2023) ("Evidence at trial is often admitted for a limited purpose, accompanied by a limiting

instruction. And our legal system presumes that jurors will attend closely the particular language of such instructions in a criminal case and strive to understand, make sense of, and follow them." (alteration adopted) (citation and internal quotation marks omitted)). The district court instructed the jury that Macrina was not on trial for violating the code and that she could be convicted only if the government proved each element of the charged offenses beyond a reasonable doubt. And Macrina consented to that limiting instruction when it was proposed. Because we "presume that jurors follow the instructions given by the district court," *United States v. Almanzar*, 634 F.3d 1214, 1222 (11th Cir. 2011), this limiting instruction mitigated any risk of undue prejudice.

### C.  *The District Court Did Not Abuse Its Discretion When It Rejected Macrina's Proposed Bribery Instruction.*

Macrina argues that the district court erred when it refused to instruct the jury that the statute defining the charged offense, section 666(a)(1)(B), prohibits bribes but not gratuities. Macrina contends that if the jury accepted the government's view—that Macrina agreed to accept certain things of value from Jafari after performing official acts benefiting him—the payment would be a gratuity and not a bribe. She maintains that her requested jury instruction on the bribery-gratuity distinction was crucial and that the failure to give this instruction prejudiced her. The government responds that the district court did not abuse its discretion by

declining to give Macrina's proposed instruction because the instruction misstated the law. We again agree with the government.

The refusal to give a requested jury instruction is an abuse of discretion if the instruction "is a substantially correct statement of the law"; "was not covered by the charge actually given"; and "dealt with some point in the trial so important that failure to give the instruction seriously impaired the defendant's ability to present an effective defense." *Focia*, 869 F.3d at 1282. A defendant must establish each condition to warrant a reversal for abuse of discretion. *See id.* at 1283.

Macrina's proposed jury instruction purported to explain the difference between a bribe and a gratuity. Whether a payment is a bribe or a gratuity can be "difficult to discern" because "the distinction, in many cases, will turn on the intent of the payer." *United States v. Agostino*, 132 F.3d 1183, 1195 (7th Cir. 1997). "If the payer's intent is to influence or affect future actions, then the payment is a bribe. If, on the other hand, the payer intends the money as a reward for actions the payee has already taken, or is already committed to take, then the payment is a gratuity." *Id.* (citing *United States v. Mariano*, 983 F.2d 1150, 1159 (1st Cir. 1993)).

Macrina's proposed instruction wrongly asserted that a payment received after an official act is completed is always a gratuity and can never be a bribe. As the Supreme Court recently explained in *Snyder v. United States*, a payment after an official act can violate section 666 if an official earlier agrees to the future reward and accepts payment after completion of the act. 144 S. Ct. 1947, 1959

(2024). In *Snyder*, the Supreme Court held that gratuities are not a crime under section 666. *Id.* at 1954. But the Court made clear that the key difference between a gratuity and a bribe is whether the official and the payer agreed to a payment for the official act. *See id.* If there were an agreement before the official act was complete to make a payment for that act, the payment received after the act could still be considered a bribe. *See id.*

Macrina's proposed jury instruction misstated the law because it failed to acknowledge the importance of the timing of an agreement to receive payment. Her proposed instruction stated that accepting a thing of value after the official action was complete would never be a bribe. Macrina requested that the jury be instructed that the "law does not prohibit a public official accepting or agreeing to accept a thing of value <u>after</u> performing government business, a government transaction, or a series of government transactions," and that if the jury finds that "the Defendant *accepted* or agreed to accept anything . . . of value after performing government business, a government transaction, or a series of government transactions, then [it] cannot rely on that thing of value as a basis to find the Defendant violated the law."

*Snyder* held that if an official agrees to accept payment for an official act and does not receive payment until after the act is complete, the payment is still considered a bribe. *See id.* The Supreme Court posited a hypothetical in which "a bribe [is charged] where the agreement was made before the act but the payment was made after the act." *Id.* The Supreme Court noted that an "official might

try to defend against the bribery charge by saying that the payment was received only after the official act and therefore could not have 'influenced' the act." *Id.* But the Court explained that this argument must fail: "By including the term 'rewarded,' Congress made clear that the timing of the agreement is the key, not the timing of the payment, and thereby precluded such a potential defense." *Id.* So the district court did not abuse its discretion by refusing to give Macrina's proposed jury instruction, which erroneously made the timing of the payment instead of the timing of the agreement the key issue.

## IV. CONCLUSION

We **AFFIRM** Macrina's convictions.