**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-13740

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

SHERLYN SIMS,
a.k.a. Sherlyn Dzinzi,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cr-00192-SCJ-JEM-3

————————————————

Before ROSENBAUM, GRANT, and MARCUS, Circuit Judges.

PER CURIAM:

Sherlyn Sims appeals her convictions for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and

substantive money laundering, in violation of 18 U.S.C. § 1957. At trial, the government introduced evidence that Sims had laundered over $1.2 million in fraud proceeds from romance scams and business email compromise schemes through bank accounts opened in the name of Grace Trading, LLC, her sham women's and children's clothing company. The government identified Sims after searching the cellphone of Presley Ihimekpen ("Presley"), one of her co-conspirators and the father of her oldest child. Presley's phone revealed copious communications between Sims and Presley indicating that she had conducted dozens of transactions at his direction, that she was aware of the fraudulent nature of the funds going into her accounts, and that she had set up bank accounts in Grace Trading's name solely to receive and launder criminal proceeds. The jury convicted Sims on all counts, and she was sentenced to 46 months' imprisonment, plus three years of supervised release.

On appeal, Sims argues that the district court erroneously: (1) denied her motion for a judgment of acquittal based on insufficiency of the evidence; (2) admitted into evidence a Small Business Administration ("SBA") loan application; (3) charged the jury with a deliberate ignorance instruction; and (4) barred Sims from mentioning during closing statements the government's failure to call Presley as a witness. After careful review, we affirm.

**I.**

We review *de novo* whether the evidence is sufficient to sustain a conviction, viewing the facts and drawing all reasonable inferences therefrom in the light most favorable to the government.

*United States v. Davis*, 854 F.3d 1276, 1292 (11th Cir. 2017).  We review a district court's evidentiary rulings for abuse of discretion.  *United States v. Kapordelis*, 569 F.3d 1291, 1312–13 (11th Cir. 2009).  Under this deferential standard, we must affirm unless we find the district court has made a clear error of judgment, or has applied the wrong legal standard.  *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009).  We review *de novo* a challenge to a deliberate ignorance instruction.  *United States v. Stone*, 9 F.3d 934, 937 (11th Cir. 1993).  A district court has broad discretion to formulate its jury charge as long as the charge as a whole accurately reflects the law and facts.  *United States v. Williams*, 526 F.3d 1312, 1320 (11th Cir. 2008).  We review for abuse of discretion a district court's imposed constraints on a party's closing argument.  *United States v. Simmons*, 122 F.4th 1256, 1262 (11th Cir. 2024).

Arguments not raised on appeal are deemed abandoned.  *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1145 (11th Cir. 2010).  Similarly, we do not address arguments initially raised in an appellant's reply brief.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014).  When a district court makes a ruling that rests on multiple independent grounds and an appellant fails to challenge one of those grounds on appeal, she has abandoned any challenge to that ground, and the judgment is due to be affirmed.  *Id.* at 680.

## II.

First, we are unconvinced by Sims' challenge to the district court's denial of her motion for a judgment of acquittal based on insufficiency of the evidence.  We will uphold the denial of a

motion for a judgment of acquittal if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt. *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000). Because a jury is free to choose among reasonable constructions of the evidence, the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. *United States v. Godwin*, 765 F.3d 1306, 1320 (11th Cir. 2014). Thus, we must sustain the verdict where there is a reasonable basis in the record for it. *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). A judgment of acquittal is warranted only where no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Almanzar*, 634 F.3d 1214, 1221 (11th Cir. 2011).

The test for sufficiency of evidence is identical whether the evidence is direct or circumstantial. *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015). Circumstantial evidence can be used to establish both a defendant's participation in a conspiracy and her guilt on the substantive charges. *United States v. Mapson*, 96 F.4th 1323, 1336 (11th Cir. 2024). When circumstantial evidence is relied upon to prove an element of the offense, reasonable inferences from the evidence, not mere speculation, must support the conviction. *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011).

To prove a money laundering conspiracy under 18 U.S.C. § 1956(h), the government must establish: "(1) agreement between two or more persons to commit a money-laundering offense; and (2) knowing and voluntary participation in that agreement by the

defendant." *United States v. Broughton*, 689 F.3d 1260, 1280 (11th Cir. 2012). Knowledge under § 1956 only requires a defendant to know that the money originated from an illegal source, not the specific nature of that source. *United States v. Spila*, 136 F.4th 1296, 1304 (11th Cir. 2025). To prove substantive money laundering under § 1957, the government must show the defendant used a bank or other financial instruction to knowingly "conduct a monetary transaction involving more than $10,000 of illegally obtained funds." *United States v. Iriele*, 977 F.3d 1155, 1173 (11th Cir. 2020).

Here, the district court did not err in denying Sims' motion for a judgment of acquittal. The only question on appeal is whether the government presented sufficient evidence for the jury to find beyond a reasonable doubt that Sims knew or deliberately ignored that the funds were gained fraudulently. It did. Viewing the facts and any inferences drawn from them in the light most favorable to the government -- as we must, *see Davis*, 854 F.3d at 1292 -- the record reflects that: (1) based on the activity in Grace Trading's accounts, which began receiving large amounts of money days after their formation and exhibited activity atypical of a small clothing business, Sims set up the company and its accounts to launder funds; (2) based on a phone call in which Sims impersonated a fraud victim, she did so knowingly and in furtherance of the conspiracy in order to learn the location of the victim's money; and (3) based on Sims' refusal to "escalate the matter" when two Grace Trading accounts -- at Bank of America ("BOA") and Chase -- were closed, her decision instead to open a third account at another bank, her failure to pay taxes on any funds deposited into the Grace

Trading accounts, and her SBA loan application, in which she falsified Grace Trading's income and activities, she knew the company was a sham. Combined, this evidence, while circumstantial, was sufficient to support Sims's convictions.

As for her "innocent" explanations of the evidence, they are not the only reasonable interpretations of the evidence, nor was the jury required to accept them. *Godwin*, 765 F.3d at 1320. For example, Sims says she made the phone call impersonating the victim as a favor to Presley without knowing its true purpose, but it nevertheless was reasonable for the jury to conclude she acted with knowledge in making that call. Indeed, Sims directly participated in the conspiracy by transferring funds and benefitted from the conspiracy, which was evidenced by her use of the Grace Trading accounts for personal expenses. And while BOA never told Sims why Grace Trading's account was being closed, a "reasonable construction" of her failure to recover the $86,132.43 in deposits BOA held afterwards is that Sims was not acting as an innocent paymaster, but knew those were illegal funds and did not want to draw further attention to them. Moreover, although the messages Sims exchanged with Presley did not directly speak of money laundering, they did speak of the percentages Sims and Presley would earn, percentages far larger than what a legitimate paymaster typically earns. Thus, it was reasonable for the jury to find that Sims and Presley were tacitly discussing money laundering, especially since Special Agent Jared Sikorski testified that their messages were consistent with messages between the other coconspirators about money laundering. And finally, as for Sims' argument that there

was no evidence she provided false information to the banks she had Grace Trading accounts with, that was not a required element of her charges. *Broughton*, 689 F.3d at 1280; *Iriele*, 977 F.3d at 1173.

Accordingly, we affirm the district court's denial of Sims' motion for a judgment of acquittal.

## III.

We also find no merit in Sims' claim that the district court abused its discretion by admitting her SBA loan application into evidence. Under Federal Rule of Evidence 404(b), evidence of past crimes, wrongs, or other acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). To be admissible under Rule 404(b), evidence of prior acts must (1) be relevant to an issue other than the defendant's character; (2) be sufficiently supported by proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s); and (3) possess probative value that is not substantially outweighed by the danger of undue prejudice and otherwise comply with Rule 403. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). By contrast, evidence of criminal conduct falls outside the scope of Rule 404(b) and is independently admissible intrinsic evidence if it "is linked in time and circumstances with the crime charged or evidence that is an integral and natural part of the complete story of the crime." *United States v. Horner*, 853 F.3d 1201, 1213 (11th Cir. 2017).

Whether offered under Rule 404(b) or as intrinsic evidence, the district court must find that the proffered evidence meets the requirements of Federal Rule of Evidence 403.  *Edouard*, 485 F.3d at 1344.  Under Rule 403, a district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Rule 403 'is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility.'"  *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011).  Consequently, we view the disputed evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.  *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006).

Whether the probative value of evidence is substantially outweighed by its prejudicial effect is a determination falling within the sound discretion of the district court and calls for a common-sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, and temporal remoteness. *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997). When we've found that other acts evidence was inextricably intertwined with the crimes charged, even when those other acts involve criminal activity, we've refused to hold that the evidence should nonetheless be excluded as unduly prejudicial. *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1211 (11th Cir. 2009). "The test under Rule 403 is whether the other acts evidence was dragged

in by the heels solely for prejudicial impact." *Id.* (citation modified). A limiting instruction can reduce any unfair prejudicial impact of evidence under Rule 403. *United States v. Macrina*, 109 F.4th 1341, 1350 (11th Cir. 2024). Juries are presumed to follow limiting instructions. *United States v. Hill*, 643 F.3d 807, 829 (11th Cir. 2011).

Here, in denying Sims' motion to exclude the SBA loan evidence -- in which Sims misrepresented Grace Trading's financial information -- the district court found that the loan application was admissible as intrinsic evidence, and, alternatively, that it was admissible under Rule 404(b). But in her initial brief to us, Sims does not dispute the court's determination that the SBA loan application was intrinsic evidence; she argues only that it was irrelevant and the court erred in finding it admissible under Rule 404(b) and Rule 403(b).[1] Because Sims did not challenge the court's determination that the loan evidence was admissible as intrinsic evidence, we do not reach the court's alternative ground that the loan evidence was admissible under Rule 404(b). *Sapuppo*, 739 F.3d at 680.

Additionally, the district court did not abuse its discretion in finding that, under Rule 403, the probative value of the loan application was not substantially outweighed by its prejudicial effect. The record reflects that the application was contemporaneous with Sims's involvement in the conspiracy, and the money laundering and the application both involved Sims' misrepresentation of Grace

---

[1] While Sims argued that the loan was not inextricably intertwined with the laundering conspiracy in her reply brief, we do not address arguments raised for the first time in reply. *Sapuppo*, 739 F.3d at 683.

Trading's nature and operations.  *See Calderon*, 127 F.3d at 1332.  Thus, as the district court found, the SBA loan evidence was "inextricably intertwined with the money laundering offenses to be tried," and it was "highly probative," relating directly to Sims's knowledge of Grace Trading's legitimacy and her knowledge of the criminal activity underlying the funds she transferred.  As a result, we cannot say it was "dragged in by the heels solely for prejudicial impact."  *US Infrastructure*, 576 F.3d at 1211 (citation modified).

In short, viewed "'in a light most favorable to its admission,'" Sims' misrepresentation of Grace Trading's business activities in the application provided evidence that she knew Grace Trading was a sham entity and she organized it specifically to facilitate the money laundering.  *Smith*, 459 F.3d at 1295.  Moreover, the court gave a limiting instruction after the loan evidence was introduced, reducing the risk of unfair prejudice.  *Macrina*, 109 F.4th at 1350.  Accordingly, we affirm the admission of the SBA loan application.

## IV.

Next, we are unpersuaded by Sims' claim that the district court erred by charging the jury with a deliberate ignorance instruction.  We will not reverse due to an erroneous instruction unless we are "'left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'"  *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013).  And we will not reverse a conviction because of a jury charge unless "'the issues of law were presented inaccurately, or the charge improperly

guided the jury in such a substantial way as to violate due process.'" *United States v. Isnadin*, 742 F.3d 1278, 1296 (11th Cir. 2014).

We recognize deliberate ignorance as an alternative to an actual knowledge requirement that applies when a defendant is suspicious but does not make further inquiries, so as to remain ignorant. *United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006). This means that a deliberate ignorance instruction is appropriate where there are facts supporting the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution. *United States v. Maitre*, 898 F.3d 1151, 1157 (11th Cir. 2018). District courts give that instruction in error when there is relevant evidence of only actual knowledge rather than deliberate avoidance. *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008).

However, any error in giving a deliberate ignorance instruction is harmless if the jury was properly instructed that a deliberate ignorance finding requires proof beyond a reasonable doubt and on the theory of actual knowledge, and sufficient evidence to support actual knowledge was introduced. *Stone*, 9 F.3d at 937–40. This is so because we assume juries obey the court's instructions, and if, as the defendant claims, "there was insufficient evidence of deliberate ignorance to prove that theory beyond a reasonable doubt, then the jury, following the instruction, as we must assume it did, did not convict on deliberate ignorance." *Id.* at 938.

Here, the district court did not err in giving a deliberate ignorance instruction because there was sufficient evidence to infer that Sims was aware of, yet elected to ignore, the likelihood that the funds she was paid to transfer were illegally gained. As we've noted, Sims called a bank to impersonate a fraud victim, opened a third Grace Trading bank account after the first two were closed, and used Grace Trading in a manner inconsistent with legitimate business activity. Indeed, $1.2 million passed through Grace Trading's accounts in a year, and unlike a traditional escrow account, Sims kept a large portion of the deposits she transferred elsewhere.

Other evidence supported the deliberate ignorance instruction as well. For instance, Sims regularly withdrew over $10,000 from Grace Trading's accounts by making smaller withdrawals at multiple locations instead of a single large withdrawal, and an anti-money laundering specialist testified that banks must file reports for every withdrawal over $10,000. In addition, Sims denied working with Presley when interviewed by authorities, cutting against her claim that she genuinely thought the transfers were all legitimate. Sims also received a $15,000 deposit into her personal bank account from another coconspirator, Bright Eigbedion, for "materials payment," which corresponded with the amount of costs she claimed Grace Trading had on her SBA loan -- supporting the government's claim that she knew Grace Trading was a sham entity. And, when Grace Trading's BOA account was closed by the bank, she did not protest when the bank kept its $86,132.43 balance rather than disbursing it back to her. This evidence was sufficient to support an inference that Sims turned a blind eye toward the likelihood

of criminal activity, making the deliberate ignorance instruction appropriate.

Regardless, even if the district court erred in giving a deliberate ignorance instruction -- and we do not believe it did -- the error was harmless. In its jury instructions, the court explained that Sims could only be found guilty of money laundering and conspiracy to launder money if she acted "knowingly." In so doing, it defined "knowingly" as including both actual knowledge *and* deliberate ignorance, like this:

> So you may find that a defendant knew that she received the proceeds from some unlawful activity if you determine beyond a reasonable doubt that the defendant, first, actually knew that the funds in the -- actually knew that the funds in the defendant's bank accounts were actually proceeds of some unlawful activity; or, second, had every reason to know but deliberately closed her eyes to that.

Thus, the court instructed that knowledge was a required element of the offense, and deliberate ignorance was an alternative means to actual knowledge of establishing the requisite knowledge.

Moreover, the cumulative weight of the evidence presented at trial was sufficient to support a finding of actual knowledge by the jury. *Stone*, 9 F.3d at 937–40. Among other things, Sims indicated Grace Trading was a clothing wholesaler, yet she did not make transactions consistent with a clothing business, she made multiple same-day sub-$10,000 cash withdrawals at multiple

locations, the memo lines on the deposits Grace Trading received had nothing to do with clothing or cars (another claimed business activity), and Grace Trading received large cash deposits from individuals across the country and transferred those funds to locations all over the world. Further, Sims made several misrepresentations during the conspiracy: impersonating a victim, falsifying information about Grace Trading on the SBA loan application, and lying to investigators by denying that Presley directed her to make the transfers. Additionally, Sims and Presley sent hundreds of communications about the transfers, some of which used language indicative of money laundering. Because there was sufficient evidence for the jury to find Sims guilty under an actual knowledge theory, any error by the court in giving the deliberate ignorance instruction was harmless. Therefore, we affirm as to this issue too.

## V.

Finally, we are unconvinced by Sims' claim that the district court abused its discretion by barring her from mentioning during closing statements the government's failure to call Presley, her co-conspirator. District courts have "'great latitude'" to restrict statements during closing arguments in order to ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial. *Simmons*, 122 F.4th at 1263. Where there is no abuse of discretion, a district court's decision to limit closing arguments will be upheld as long as the defendant has the opportunity to make all legally tenable arguments supported by the facts of the case. *United States v. Harris*, 916 F.3d 948, 954 (11th Cir. 2019). Defendants have a constitutional right to present

24-13740                    Opinion of the Court                      15

a complete defense, but "if the court permits a defendant to present the essence of his desired argument to the jury, his right to present a complete defense has not been prejudiced," even if the court imposes a "modest restriction" on a defendant's argument. *Id.* at 959.

"The long-standing rule in this circuit is that any inference from a party's failure to call a certain witness equally available to both parties is impermissible." *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970).[2]  This rule even applies when the government declines to call a witness in a criminal trial. *Luttrell v. United States*, 320 F.2d 462, 465 (5th Cir. 1963).

Here, the district court did not abuse its discretion by restricting closing arguments to prevent Sims from highlighting the government's failure to call Presley as a witness.  As the record shows, Sims still was able to argue her defense theory that she was manipulated by Presley and lacked any knowledge of criminal activity.  Further, Sims admits that Presley was available to both parties as a witness.  Thus, the district court did not err in preventing Sims from arguing during closing that Presley's absence supported an inference against the government that Sims was innocent.

The court also barred Sims from arguing during closing that Presley did not testify and that there was no record of what he may have said if he had testified.  While this was not an explicit

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

argument for drawing an inference against the government, district courts have discretion to restrict closing arguments to "'ensure that argument does not stray unduly from the mark.'" *Simmons*, 122 F.4th at 1262. We cannot say that the court abused its discretion in imposing this restriction unless it prejudiced Sims somehow. But as we've observed, Sims was not prejudiced by the court's limitation on her closing arguments because she was still able to argue that the government did not meet its burden of proof based off the "holes in the evidence," and Sims invoked Presley as being ultimately responsible for the phone call where Sims misrepresented her identity and Grace Trading's SBA loan application. In addition, Presley's guilty plea and plea agreement were entered into evidence, and the jury was already aware that Presley did not testify. And, in any event, none of the cases Sims cites requires district courts to allow parties to mention a missing witness during closing arguments when the witness was equally available to both sides.

The record before us reflects that the district court imposed only a "modest restriction" on Sims's closing argument, and Sims was still able to, and did, argue that she was unwittingly entangled in a criminal conspiracy by Presley, who "misled" her. Since Sims was able to present her core arguments to the jury during closing arguments, she was not prejudiced by the district court's restrictions. Thus, we also affirm on this issue.

**AFFIRMED.**